## Mineral Development Company v. Craft.

(Decided March 8, 1912.)

### Appeal from Letcher Circuit Court.

1. Land—Adverse Possession—Intervening Land.—A man living on one tract of land is not in adverse possession of another tract which is separated from him by intervening lands held by others.

2. Continuous Possession For Statutory Period.—Adverse possession

must be continuous 'and title will not be acquired where on all the proof it appears that the defendant did not for the statutory period, claim the land as his own.

DISHMAN, TINSLEY & DISHMAN, and D. D. FIELDS for appellant.

WOOTTON & MORGAN and DAVID HAYS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

On March 3, 1871, Henry Craft obtained two patents from the Commonwealth of Kentucky, each for 200 acres of land. On February 23, 1882, Henry Craft and wife conveyed this land by warranty deed to W. D. Jones from whom it passed by a regular chain of title to the Mineral Development Company. That company brought this suit against D. L. Craft to quiet its title to the land alleging that he was setting up claim to it. D. L. Craft answered, alleging that it was his land, and that he had been in adverse possession of it for more than 15 years before the suit was filed. His title comes in this way: On April 30, 1858, David Sergent obtained a patent from the Commonwealth for 125 acres of land. He traded this land to Henry Craft about the year 1861, and Henry Craft then settled upon it, and while living there obtained from the Commonwealth two patents each for 200 acres above referred to. After Henry Craft had obtained these patents, in the year 1876, he made an arrangement with his son, D. L. Craft, under which Sergent was to deed the land to D. L. Craft and D. L. Craft was to take care of Henry Craft and wife as long as they lived, and deed to each of his brothers and sisters their portion of the land as they wanted it.     Under this arrangement David Sergent, who had not made a deed to Henry Craft, made a deed on February 18, 1876, to D. L. Craft for a large boundary of land which included the three patents referred to and a great deal of other land, the deed calling for the tops of the ridges and certain water courses. After giving the boundary of the land the deed concludes with these words:

"To have and to hold the said tract of land free from the claim of ourselves and all persons claiming through us or by our title that we have right, title or claim to in said boundary and hereby relinquish all claims we may have to the same by right of homestead or dower in the same."

D. L. Craft continued to live on the land under his deed from that time. In the year 1889 he made deeds to his brothers and sisters for such parts of the boundary as they had selected, and reserved for himself about 50 acres of land, deeding to each of his brothers and sisters as a rule about the same quantity. When he made these deeds his father, Henry Craft, who was living in the house with him, had conveyed the two patents of 200 acres each to Jones and he knew it. No part of the 50 acres which he reserved for himself or of the land which he conveyed to his brothers and sisters was included in these 200-acre patents. It turned out that the two patents of 200 acres lapped on each other, and also lapped on the 125-acre patent issued to David Sergent. The Mineral Development Company in this action only sought to quiet its title to that part of the land embraced in the two 200-acre patents which was not embraced in the 125-acre patent to David Sergent. D. L. Craft had no deed from Henry Craft for this land. The title to it was not in David Sergent and so he obtained no title to this land by the deed which he got from David Sergent. He, therefore is without right to it unless he has acquired a title by adverse possession. Previous to 1889 a clearing which he had made extended over the line of one of these 200-acre patents, and it is insisted for him that he was thus in possession of all the land within the calls of his deed. Whatever force there might be in this, if he had so remained in possession for 15 years, the fact is that he conveyed away to his brothers and sisters in 1889, the land lying between the place where he lived and this field, so that after 1889, he was living upon a tract which had no connection with this field, but was separated from it by lands which he had deeded to other parties. Not only so but the evidence is very persuasive, that it was intended that all this cleared land should be embraced in the deed which he made to his brother, Samuel Craft, and from all the facts and circumstances we conclude without doubt that from 1889 until about the time this controversy arose, he did not claim the land that is in controversy here; but on the contrary claimed only the 50 acres upon which he lived. It is perfectly evident from the whole record that in the division of the tract between him and his brothers and sisters, the two surveys each for 200 acres were not considered as a part of the land to be divided, and that the division which they made was of the land which was then held outside of these two

200-acre surveys, which they all knew Henry Craft had sold and conveyed by warranty deed to Jones. The reason of this is plain. The land they all got, they got through their father, Henry Craft. They knew that Henry Craft had conveyed the other land to Jones with warranty, and if they disturbed Jones, they would be liable to the extent of assets received on the warranty of Henry Craft to Jones. The idea of claiming this land is evidently an afterthought.

Judgment reversed and cause remanded for a judgment as prayed in the petition.